IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JESSICA ROSS, | CASE NO. 1:14-CV-00315 |
| Plaintiff, | JUDGE PEARSON |
| v. | MAGISTRATE JUDGE VECCHIARELLI |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | **REPORT AND RECOMMENDATION** |

Plaintiff, Jessica Ross ("Plaintiff"), challenges the final decision of Defendant, Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner"), denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 423, 1381(a). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation. For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

## I. PROCEDURAL HISTORY

Plaintiff previously applied for SSI on October 2008, alleging disability beginning on January 1, 2001. (Transcript ("Tr.") 71.) After Plaintiff's claim was denied initially and on reconsideration, an administrative law judge ("ALJ") issued a written decision denying Plaintiff's claim on March 17, 2010. (Tr. 71-79.) The Appeals Council denied Plaintiff's request for review on March 16, 2012. (*Id.*)

On June 1 2010, Plaintiff filed the instant application for SSI, alleging a disability onset date of March 18, 2010. (*Id.*) The application was denied initially and upon

reconsideration, and Plaintiff requested a hearing before an ALJ. (*Id.*) On August 27, 2012, an ALJ held Plaintiff's hearing. (*Id.*) Plaintiff participated in the hearing, was represented by counsel, and testified. (*Id.*) A vocational expert ("VE") also participated and testified. (*Id.*) On September 25, 2012, the ALJ found Plaintiff not disabled. (Tr. 16.) On December 12, 2013, the Appeals Council declined to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1.) On February 13, 2014, Plaintiff filed her complaint to challenge the Commissioner's final decision. (Doc. No. 1.) The parties have completed briefing in this case. (Doc. Nos. 16, 17.)

Plaintiff asserts the following assignments of error: (1) The ALJ erred in her analysis of this matter under the *Drummond* standard; and (2) the ALJ erred in her analysis at Step Five of the sequential evaluation.

## II. EVIDENCE

### A. Personal and Vocational Evidence

Plaintiff was born in September 1982 and was 27-years-old on the date she filed her application. (Tr. 30.) She had at least a high school education and was able to communicate in English. (*Id.*) She had no past relevant work. (*Id.*)

### B. Medical Evidence[1]

#### 1. Medical Reports

Pain management specialist Bruce A. Piszel, M.D., treated Plaintiff for ongoing

---

[1] The ALJ found that Plaintiff had the following severe impairments: major depressive disorder, post traumatic stress disorder, grade I spondylolisthesis at L-5 and pancreatitis. (Tr. 22.) Plaintiff's challenges to the ALJ's decision concern only her back impairment and the VE's testimony, however. Accordingly, the Court will limit its summary of Plaintiff's medical records to evidence most relevant to those issues.

2

complaints of low back pain.  Relevant findings throughout 2010 include pain with radiation to the right hip, tenderness in the lumbar region, and positive straight leg raise testing.  (Tr. 497-509.)  Plaintiff had a medical branch block on April 23, 2010.  (Tr. 495.)  By May 13, 2010, Plaintiff had experienced a 40% relief in symptoms from her branch block procedures.  (Tr. 498.)  Dr. Piszel continued Plaintiff's treatment regimen and prescribed a right trocanteric bursa injection for Plaintiff's right hip pain, which he administered on June 4, 2010.  (Tr. 499, 505.)  On June 22, 2010, Plaintiff reported that she had experienced 75% relief from her current regimen and last procedure.  (Tr. 509.)  Plaintiff's physical examination was unremarkable.  (Tr. 508.)

On September 16, 2010, Plaintiff again reported that she had experienced a 75% relief in symptoms with her current treatment regimen.  (Tr. 526.)  Dr. Piszel's diagnosis included hip pain, lumbar/sacral without myelopathy, and lumbosacral radiculopathy.  (*Id.*)  Dr. Piszel's examination findings were essentially identical to his previous examinations, and continued to be stable in December 2010.  (Tr. 524-529.)

On January 5, 2012, Plaintiff was referred to Laurence Kennedy, M.D., for a consultation concerning recurrent pancreatitis and hypertriglyceridemia.  (Tr. 573.)  Notes also reflected that Plaintiff had a number of other intrabdominal surgeries, including tubal ligation and surgery for ovarian cysts.  (*Id.*)  On examination, Plaintiff was 237 pounds with a body mass index greater than 35.  (Tr. 574.)  Dr. Kennedy advised Plaintiff that losing weight would help her reduce the risk of recurrent pancreatitis.  (*Id.*)  Dr. Kennedy also emphasized that anyone who has recurrent episodes of pancreatitis should strictly avoid alcohol at any time.  (*Id.*)

In early February 2012, Plaintiff visited Dr. Piszel with complaints of difficulty

3

ambulating, sitting, and standing. (Tr. 605-606.) Plaintiff had a reduced range of motion in her lumbar spine but had full strength and intact reflexes. (Tr. 605.) Dr. Piszel prescribed physical therapy to increase Plaintiff's strength, range of motion, and cardiovascular endurance. (Tr. 606.)

On March 1, 2012, Plaintiff reported to her physical therapist that her pain was very high. (Tr. 603.) On March 13, 2012, Plaintiff stated that she did not feel any progress as a whole, but reported that her back was feeling better. (Tr. 602.) On April 2, 2012, Plaintiff's physical therapist and Dr. Piszel indicated that Plaintiff's range of motion had increased since February and that she exhibited improvement in sitting and standing. (Tr. 599, 606.)

On May 15, 2012, Dr. Piszel reported that Plaintiff had experienced a 50% improvement in symptoms on medication with no accompanying problems with concentration, coordination, or driving. (Tr. 630, 633.)

An MRI of the lumbar spine performed on July 25, 2012, revealed anterolisthesis of L5 on S1. (Tr. 615.) Dr. Piszel noted that the results were a possible confirmation of etiology of pain radiating down the left lower extremity. (Tr. 622.) The overall impression was 3 mm of anterolisthesis at L5-S1. (Tr. 615.)

Dr. Piszel examined Plaintiff again on August 13, 2012. (Tr. 622-625.) Plaintiff complained of radiating pain in her right hip and low back. (Tr. 622.) Dr. Piszel recounted Plaintiff's recent MRI result as documenting anterolisthesis at L5-S1. (Tr. 622.) Plaintiff had a moderately positive straight leg raise test but normal muscle testing, reflexes, and sensation. (Tr. 624.) She reported 25% diminishing pain relief with her current treatment regimen. (Tr. 625.) Dr. Piszel prescribed an epidural steroid injection. (*Id.*)

### 2. Agency Reports

On September 22, 2010, Walter Holbrook, M.D., reviewed Plaintiff's record and opined that Plaintiff was capable of performing light exertional work with frequent stooping and no other limitations. (Tr. 91-92.) Muhammad N. Khan, M.D., reviewed the record on February 25, 2011, and affirmed Dr. Holbrook's assessment that Plaintiff retained the ability to perform light work with frequent stooping. (Tr. 104-105.)

## C. Hearing Testimony

### 1. Plaintiff's Hearing Testimony

Plaintiff lived with her three children, ages 11, 6, and 5. (Tr. 45.) She testified that she did not work from 2004 until 2011 because she had to take care of her children. (*Id.*) She received public assistance including food stamps. (Tr. 46.) Plaintiff stated that she fractured her back in 2007 when giving birth to her third child and had not looked for work since then. (*Id.*)

Plaintiff testified that she did not drink alcohol and smoked one pack of cigarettes per day. (Tr. 47.) Plaintiff suffered from pancreatitis, which caused stabbing, shooting pains below her breast and between her shoulder blades. (Tr. 54-55.) She also complained of burning down her legs, tingling in her toes, numbness in her feet, and pain in her back. (Tr. 49.) She received injections in her hip and back once a month for her pain. (Tr. 48-49.) She also participated in physical therapy. (Tr. 50.) Plaintiff testified that she could not stand for longer than a couple minutes without having to change positions because of her pain. (Tr. 51.) She could walk for about five minutes before she needed to take a break. (*Id.*) She stated that she experienced pain whether she was sitting, standing, or lying down. (Tr. 52.) Plaintiff testified that her children and a friend helped

with household chores and that she could perform grocery shopping with some assistance. (Tr. 60.)

### 2. Vocational Expert's Hearing Testimony

Dr. Robert Mosley, a vocational expert, testified at Plaintiff's hearing. The ALJ asked the VE to assume a hypothetical individual similar to Plaintiff's age, education, and work history who could frequently lift up to 10 pounds and occasionally lift up to 20 pounds. (Tr. 64.) The individual would require a job that would allow for a sit/stand option, which the ALJ defined as a job where the essential duties could be performed in either a seated or standing position without any off task time. (*Id.*) The individual could perform simple, routine, repetitive tasks in an environment that does not require close interactions with the general public. (*Id.*) The VE testified that the hypothetical individual would be capable of performing such work as an electronics worker (unskilled, light work; Dictionary of Occupational Titles ("DOT") 726.687-010), and an assembler, plastic hospital products (unskilled, light work; DOT 712.687-010). (Tr. 64-65.)

### III. STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a). To receive SSI benefits, a recipient must also meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. 20 C.F.R. §§ 404.1520(a)(4) *and* 416.920(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) *and* 416.920(b). Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) *and* 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) *and* 416.920(d). Fourth, if the claimant's impairment does not prevent her from doing her past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) *and* 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1560(c), *and* 416.920(g).

### IV. SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant has not engaged in substantial gainful activity since June 1, 2010, the application date.

2. The claimant has the following severe impairments: major depressive disorder, post traumatic stress disorder, grade I spondylolisthesis at L-5 and pancreatitis.

3.       The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

4.       After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b), with restrictions. Specifically, she can lift up to 10 pounds frequently and 20 pounds occasionally. She requires a job that will allow for a sit/stand option, which is defined as one where the essential job duties could be performed in either a seated or standing position without any off task time. She can perform simple, routine, repetitive tasks in an environment that does not require close interaction with the general public.

5.       The claimant has no past relevant work.

6.       The claimant was born in September 1982 and was 27-years-old, which is defined as a younger individual age 18-49, on the date the application was filed.

7.       The claimant has at least a high school education and is able to communicate in English.

8.       Transferability of job skills is not an issue because the claimant does not have past relevant work.

9.       Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

10       The claimant has not been under a disability, as defined in the Social Security Act, since June 1, 2010, the date the application was filed.

(Tr. 22-31.)

## LAW & ANALYSIS

### A.    Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th

8

Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. *Id.* However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

### B. Plaintiff's Assignments of Error

#### 1. The ALJ Erred in her Analysis of this Matter Under the *Drummond* Standard.

Plaintiff argues that the ALJ violated the holding of *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 2004) when she adopted the findings and conclusions of the first ALJ who reviewed Plaintiff's claim for benefits (the "first ALJ"), because the evidence presented to the ALJ in the instant case shows a change, or deterioration, in Plaintiff's condition since the first ALJ's decision. For the following reasons, Plaintiff's argument is without merit.

9

Plaintiff's argument is essentially that her condition worsened since the first ALJ's decision, and therefore the ALJ was precluded by *Drummond* from adopting the first ALJ's findings and RFC. However, that is not the holding of *Drummond*. Rather, in *Drummond*, the Sixth Circuit held that, because *res judicata* applied to proceedings under the Act, "[a]bsent evidence of an improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ." 126 F.3d at 842. The Sixth Circuit did not hold that the subsequent ALJ must adopt findings different from those of the prior ALJ. Rather, the standard for reviewing a subsequent ALJ's decision remains substantial evidence. *Id. at 843* (applying the substantial evidence standard to the ALJ's conclusion that the claimant's condition had improved).

Here, Plaintiff maintains that her condition worsened after the first ALJ rendered his decision because (1) an MRI from July 25, 2012, demonstrated disc bulge at L3-4 and L4-5 with encroachment upon the inferior recesses of the neuroforamin and the anteriolisthesis with moderate bilateral neuroforaminal narrowing at L5-S1 and (2) more recent treatment notes from Dr. Piszel indicate that Plaintiff complained of worsening back pain. In her decision, however, the ALJ addresses Dr. Piszel's recent treatment records, Plaintiff's complaints of worsening pain, and the results of the July 2012 MRI. (Tr. 25-27.) The ALJ, nonetheless, determined that Plaintiff was capable of performing a limited range of light work, and the following substantial evidence supports that conclusion:

- Drs. Holbrook and Khan each concluded that Plaintiff retained the ability to perform light exertional work. (Tr. 27-28, 91-92, 104-105.)

- Plaintiff testified that she was the primary caregiver of her children and had not gone through with recommended back surgery because she did not have anyone to help with her children. (Tr. 29.) The ALJ found that this testimony indicated that Plaintiff was capable of

- greater activity than she alleged. (*Id.*)

- Dr. Piszel repeatedly noted that Plaintiff walked with a normal gait and without the need for an ambulatory device. (Tr. 29.)

- Plaintiff alleged that she needed to use a mobile cart to shop and required assistance with putting on socks and with personal hygiene, but there was no evidence that she reported those significant limitations to any of her treating physicians. (Tr. 29.) The ALJ noted: "That the claimant has not reported the significant daily activity limitations she reported in connection with her disability claim suggest symptom exaggeration for secondary gain." (*Id.*)

- The ALJ noted that evidence of record regarding Plaintiff's daily activities was consistent with an RFC for light work. (Tr. 29.) For example, Plaintiff was the primary caregiver for her young children; she could prepare simple meals; she could drive and shop; and she could take her children to softball games. (*Id.*)

- No treating source opined that Plaintiff had incapacitating or debilitating symptoms that would prevent her from returning to the workplace at a reduced level of exertion such as in the performance of light work. (Tr. 29.)

- While Dr. Piszel's examination findings included positive straight leg raise tests, they also revealed intact motor strength, sensation, coordination, and reflexes. (Tr. 25, 488, 491, 497-498, 507-508, 524-529, 624, 628, 630-632.)

- Plaintiff reported that her pain was well-controlled with medication. (Tr. 26, 489, 499, 509, 526, 630, 633.)

- The ALJ noted that Plaintiff's alleged back pain did not require frequent emergency room treatment, inpatient hospitalization, office visits that were not regularly scheduled, a TENS unit, or any ambulatory aid. (Tr. 26.)

Because substantial evidence supports the ALJ's conclusion regarding Plaintiff's RFC, and the standard for reviewing a subsequent ALJ's decision remains substantial evidence, Plaintiff's first assignment of error lacks merit.

### 2. The ALJ Erred in her Analysis at Step Five of the Sequential Evaluation.

Plaintiff argues that the ALJ did not meet her burden of proving that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. According to Plaintiff, the ALJ erred by relying on the VE's testimony to conclude that Plaintiff could perform some work despite her requirement of a sit/stand option, because the VE's testimony was inconsistent with the DOT.  Plaintiff challenges the VE's credibility, arguing that, under the Social Security rulings, where a change in position cannot be accommodated by scheduled breaks, "the occupational base for a full range of unskilled sedentary work will be eroded." SSR 96-9p.  For the following reasons, Plaintiff's argument is not well taken.

At the fifth and final step of an ALJ's analysis, the ALJ must determine whether, in light of the claimant's residual functional capacity, age, education, and past work experience, the claimant can make an adjustment to other work. 20 C.F.R. § 404.1520(a)(4).  At this step, the burden shifts to the Commissioner to prove the existence of a significant number of jobs in the national economy that a person with the claimant's limitations could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999).  To meet this burden, there must be a finding supported by substantial evidence that the claimant has the vocational qualifications to perform specific jobs. Workman v. Comm'r of Soc. Sec., 105 F. App'x 794, 799 (6th Cir. 2004) (quoting Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987)).  Substantial evidence may be produced through reliance on the testimony of a VE in response to a hypothetical question, but only if the question accurately portrays the claimant's individual physical and

12

mental impairments.  *Workman*, 105 F. App'x at 799 (quoting *Varley*, 820 F.2d at 779).

Plaintiff's argument that the VE's testimony was not credible is without merit. To support her argument, Plaintiff references Social Security Ruling 83-12, which states that "most jobs have ongoing work processes which demand that a worker be in a certain place or posture for at least a certain length of time to accomplish a certain task.  Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will." SSR 83-12.  Plaintiff argues that, based on this ruling, the ALJ could not properly rely on the VE's testimony at Step Five, because the VE testified that a sit/stand option would *not* be a problem for light, unskilled jobs. (Tr. 64.)  As Plaintiff acknowledges in her Brief, however, SSR 83-12 states that in cases of unusual limitation of ability to sit or stand, a vocational expert should be consulted to clarify the implications for the occupational base. *Id.*  Here, the ALJ asked the VE to consider a hypothetical individual who would require a sit/stand option, where the essential job duties could be performed in either a seated or standing position without any off task time. (Tr. 64.)  The VE opined that there are jobs that an individual with such limitations could perform.  (Tr. 64-65.)  He testified that at the light, unskilled level, the individual could perform such jobs as an electronics worker and an assembler, plastic hospital products.  (*Id.*)  The VE reiterated that the jobs he identified could be performed by someone who must alternate sitting and standing throughout the day due to a back disorder.  (Tr. 65.)

The ALJ has the responsibility of evaluating a witness's credibility.  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007).  The VE testified that, although Plaintiff would require a sit/stand option, there are jobs at the unskilled light level that Plaintiff could perform.  (Tr. 64-65.)   The ALJ explained in her decision exactly why she

13

found this testimony to be both credible and reliable.[2] (Tr. 34.)

Moreover, as the Commissioner notes, Plaintiff was represented by counsel at her hearing and was afforded an opportunity at that time to question the VE about any perceived inconsistencies in his testimony. The ALJ is under no obligation to investigate the accuracy of the VE's testimony beyond the inquiry mandated by Social Security Regulation 00-4p. It is the responsibility of plaintiff's counsel to challenge the accuracy of the VE's testimony through cross-examination of the VE. *Beinlich v. Comm'r of Soc. Sec.*, 345 F. App'x 163, 168 (6th Cir. 2009). "The fact that plaintiff's counsel did not do so is not grounds for relief." *Id.*; *see also Donahue v. Barnhart*, 446 F.3d 441, 446 (7th Cir. 2002) ("The ruling requires an explanation only if the discrepancy was 'identified'—that is, if the claimant (or the ALJ on his behalf) noticed the conflict and asked for substantiation. Raising a discrepancy only after the hearing, as Donahue's lawyer did, is too late."). *But see Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008) (explaining that apparent conflicts include those that were so obvious during the VE's testimony that the ALJ should have noticed them and elicited reasonable explanations). Accordingly, Plaintiff's second assignment of error does not present a basis for remand.

## VI. CONCLUSION

For the foregoing reasons, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

---

[2] The ALJ found the VE's testimony to be credible, because "it is based on [the VE's] professional experience and because it is consistent with the DOT and with the *Selected Characteristics of Occupations* (see SSR 00-04p). (Tr. 31.)

s/ *Nancy A. Vecchiarelli*<br>U.S. Magistrate Judge

Date: November 17, 2014

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).